IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KENNETH VALENTINE AWE,<br>    Plaintiff, | )<br>)<br>) Civil Action No. 7:12-cv-00546 |
| v. | )<br>) **MEMORANDUM OPINION**<br>) |
| VIRGINIA DEPTARTMENT OF<br>CORRECTIONS, <u>et al.</u>,<br>    Defendants. | )<br>) By:   Hon. Jackson L. Kiser<br>)         Senior United States District Judge |

Kenneth Valentine Awe, a Virginia inmate proceeding pro se, filed a verified Complaint pursuant to 42 U.S.C. § 1983 with jurisdiction vested in 28 U.S.C. § 1331 and § 1343. Plaintiff names as Defendants: Harold W. Clarke, the Director of the Virginia Department of Corrections ("VDOC"); Leslie J. Fleming, Warden of the Keen Mountain Correctional Center ("KMCC"); Yvonne M. Taylor, the Institutional Classification Authority ("ICA") at KMCC; and T. Justus, a Correctional Officer ("C/O") at KMCC.[1] Defendants filed a motion for summary judgment, and Plaintiff responded, making the matter ripe for disposition. After reviewing the record, I grant Defendants' motion for summary judgment because Plaintiff is not entitled to relief.

I.

The VDOC offers a Common Fare Menu ("Common Fare"), which consists of foods designed to meet the dietary needs of offenders who require a Kosher, non-pork diet for religious reasons and whose dietary requirements cannot be accommodated with food from the VDOC Master Menu. To receive Common Fare, inmates must both apply to and be approved by the ICA and VDOC Central Classification Services, and approved inmates must sign a Common Fare Agreement ("Agreement"). The Agreement stipulates that inmates who violate Common Fare

---

[1] I previously dismissed all claims against the VDOC and terminated the VDOC as a defendant, pursuant to 28 U.S.C. § 1915A(b)(1).

policies are subject to a temporary suspension from Common Fare, which reduces the extra costs of offering Common Fare and administrative burdens caused by manipulative inmates.[2] Plaintiff signed an Agreement, thereby acknowledging that his first violation, such as possessing unauthorized food from the Master Menu, would result in a six-month suspension from Common Fare.

On July 10, 2012, C/O Justus searched Plaintiff in the KMCC dining hall during breakfast, discovered a fried egg, which was available only from the Master Menu, in Plaintiff's pocket, and notified KMCC Food Services staff that Plaintiff possessed food from the Master Menu. Plaintiff subsequently received a notice of the ICA hearing scheduled to determine whether he possessed the fried egg in violation of the Agreement. Plaintiff returned the notice to staff after noting that he wanted C/O Justus to appear as a witness at the hearing.[3]

During the ICA hearing, C/O Justus explained to Taylor, KMCC's ICA, that he saw Plaintiff possess the fried egg in his pocket and that the fried egg was available only from the Master Menu. After hearing C/O Justus' and Plaintiff's testimonies, Taylor determined that Plaintiff violated the Agreement as a first offense and recommended that Plaintiff be suspended from Common Fare for six months. On August 16, 2012, Warden Fleming adopted the Taylor's recommendation and suspended Plaintiff from Common Fare for six months. Plaintiff was subsequently transferred from KMCC to the VDOC's Red Onion State Prison.

Plaintiff presents four claims in the verified Complaint. Plaintiff's first and second claims concern whether the VDOC's Common Fare policies violate the First Amendment's Free Exercise Clause and the Fourteenth Amendment's Equal Protection Clause. The third claim concerns C/O Justus' allegedly false incident report, and the fourth claim concerns Taylor's and Warden

---

[2] KMCC houses approximately 77 to 105 inmates who receive the Common Fare diet at a cost of $3.29 to $5.19 per inmate versus $2.21 per inmate eating from the Master Menu.
[3] Plaintiff did not write on the form that he wanted staff to view any video recording.

2

Fleming's decisions to temporarily suspend Plaintiff from Common Fare without reviewing video footage.[4] Plaintiff seeks permanent injunctions as relief.

## II.

Liability under § 1983 cannot be imposed upon a defendant unless the defendant is shown to have "participated directly" in the alleged violation of the federal rights. Fisher v. Washington Area Transit Auth., 690 F.2d 1133, 1142 (4th Cir. 1982). Plaintiff does not describe in claims one and two how any Defendant was personally involved with the establishment of the VDOC's Common Fare program or Agreement.[5] Furthermore, Plaintiff's transfer from KMCC renders the claims and requested injunctive relief moot as to the conditions of confinement at KMCC described in claims three and four.[6] See Incumaa v. Ozmint, 507 F.3d 281, 286-87 (4th Cir. 2007) (recognizing an inmate's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there). Even if Plaintiff was not transferred and had described a Defendant's personal involvement with claims one and two, Plaintiff's claims are meritless, and he does not establish that he suffered an irreparable injury; damages are inadequate; the balance of hardships tilts in his favor; or the public's interests are served by issuing an injunction. See eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006) (discussing the factors for an injunction).

Plaintiff fails to establish for claim one that signing the Agreement to consent to a possible suspension from Common Fare imposes an excessive and substantial burden on Plaintiff's free

---

[4] Plaintiff does not identify the federal right allegedly violated for claims 3 and 4, but I liberally construe the claims as arising under the Due Process Clause of the Fourteenth Amendment.

[5] Plaintiff writes, "VDOC [D]irector H.W. Clarke" as a sentence fragment at the end of the paragraph discussing claim one. Compl. 4. However, Plaintiff does not allege any facts involving Director Clarke, and Director Clarke did not sign the VDOC's Common Fare policy. Taylor Aff., encl. D, p. 9.

[6] Plaintiff's requested injunctions would order the VDOC to remove the penalty provisions from the Agreement; treat inmates eating Common Fare the same as inmates eating from the Master Menu; and "tak[e] away the ability for VDOC staff as the KMCC employees Justus, Taylor, [and] Fleming to lie[] and refuse to use all available means to verify the truth in matters before removing Plaintiff' from Common Fare.

exercise of religion. To set forth a freedom of religious exercise claim under the First Amendment, a plaintiff must allege sufficient facts to show that he holds a sincere religious belief and that prison regulations impose a substantial burden on his right to freely exercise that belief. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); see Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (stating a substantial burden is when a religious inmate is pressured to modify behavior and violate religious beliefs or when the government forces the religious inmate to choose between following a religious belief and forfeiting governmental benefits versus forfeiting religious belief to obtain those benefits).

Plaintiff fails to allege sufficient facts to show that the Agreement constitutes a substantial burden. Plaintiff merely states a legal conclusion that the Common Fare restrictions impose "excessive and substantial burdens" on his rights to free exercise of religion. Compl. 4; see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (noting a valid claim requires more than labels and conclusions). To the extent that he is arguing that his religious belief compels a religious diet but he should be free to not follow the dictates of his religious diet without consequences, his argument is inherently self contradictory.[7]

Plaintiff fails to establish for claim two that Common Fare policies violate the Equal Protection Clause of the Fourteenth Amendment. "Prisoners are protected under the Equal Protection Clause . . . from invidious discrimination." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). To state an equal protection claim, a plaintiff must show that he was treated differently from others with whom he is similarly situated and that this unequal treatment was the result of intentional and purposeful discrimination. Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir.

---

[7] Even if Plaintiff has a sincere religious belief of eating Common Fare, Plaintiff's claim also fails because the Agreement is reasonably related to legitimate penological interests. See, e.g., Turner v. Safley, 482 U.S. 78, 84 (1987). The VDOC has a legitimate interest in regulating which inmates legitimately receive Common Fare, and the requirement of signing the Agreement with punitive consequences for violating its terms are reasonably related to fiscal management and deterring inmates' manipulative behaviors. The $1.08 to $2.98 higher cost per inmate per day for Common Fare is a substantial difference for budget considerations. Also, inmates would otherwise ask for Common Fare until the time they decide they would rather eat from the Master Menu and vice versa.

2001). Plaintiff complains that the VDOC does not regulate, punish, or confiscate foods from inmates eating Master Menu food the way it does for inmates on Common Fare. However, Plaintiff is not similarly situated to inmates who do not require meals to be specially prepared based on a claimed religious belief. Furthermore, Plaintiff does not even allege that the VDOC intentionally discriminates against inmates on Common Fare.

Plaintiff fails to establish for claim three that C/O Justus vindictively lied about Plaintiff possessing a fried egg or that he ordered Plaintiff's six-month suspension. Plaintiff does not describe facts to establish what motive C/O Justus had to lie or that C/O Justus did, in fact, lie about the food Plaintiff possessed. See Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995) ("Mere unsupported speculation . . . is not enough to defeat a summary judgment motion."). C/O Justus neither had the authority to suspend nor actually suspended Plaintiff from Common Fare.

Plaintiff fails to establish for claim four that Taylor or Warden Fleming violated due process by not viewing a video recording. In order to prove a violation of due process, Plaintiff must show that the government deprived him of a protected liberty interest, which can arise either from the Constitution or state law. Wilkinson v. Austin, 545 U.S. 209, 226 (2005). Plaintiff must also show that the deprivation imposed an atypical and significant hardship in relation to the ordinary incidents of prison life. Sandin v. Conner, 515 U.S. 472, 484 (1995). Lastly, Plaintiff must show that the prison's process was constitutionally inadequate by balancing three factors: "(1) the private interest affected by the government action; (2) the risk of erroneous deprivation through the procedures used and the probable value, if any, of alternative or additional procedures; and (3) the state's interest, including the function involved and the fiscal and administrative burdens of added safeguards. Lovelace, 472 F.3d at 199 (citing Mathews v. Eldridge, 424 U.S. 319, 335 (1996)).

5

Like discussed for claim one, Plaintiff fails to establish that his suspension from Common Fare imposed an atypical and significant hardship.[8] Additionally, the <u>Mathews</u> factors are in Defendants' favor. The private interest affected is slight because Plaintiff does not allege he has been completely deprived of his ability to practice any religion he professes. The risk of erroneous deprivation using current procedures is minor, and Plaintiff does not propose alternative or additional procedures. Requiring every staff's allegation of inmate misconduct to be established by a video recording would disrupt the orderly operation of a prison.[9]

Furthermore, Plaintiff does not allege that the procedures used by Taylor and Warden Fleming violated due process.[10] Instead, Plaintiff alleges that Taylor and Warden Fleming violated due process by not viewing a video recording before suspending Plaintiff. However, Plaintiff did not request that the video recording be viewed, and VDOC policy did not require Taylor or Warden Fleming to review it. Accordingly, none of Plaintiff's claims warrant equitable relief.

### III.

For the foregoing reasons, I grant Defendants' motion for summary judgment.

The Clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to the parties.

ENTER: This 12th day of November, 2013.

                                                  Senior United States District Judge

---

[8] For example, he does not allege that he was permanently removed from Common Fare or completely deprived of his ability to practice any religion by the six-month suspension.

[9] Nonetheless, Taylor avers that the video quality would probably not have been able to show a fried egg in a pocket.

[10] The pre-suspension process included notice of the hearing and the charges, disclosure of due process rights for the hearing, permission to request witnesses, and a neutral decision maker. <u>See, e.g.</u>, <u>Wolff</u>, 418 U.S. at 564-71.